## MOSES L. WESTBROOK v. LUCY A. MUNGER ET AL.

1. JUDGMENT. *Bill pursuing land subject thereto. Sale of land at instance of administrator. Devotion of proceeds. Case in judgment.*
   M. sold certain land to one O., retaining a vendor's lien for the unpaid purchase-money. M. died, and the administrator of his estate filed a bill to enforce the lien and obtained a decree against O. for the unpaid purchase-money and an order of sale of the land. The land was sold under the decree, and W. D. and C. D., heirs of the estate of M., became the purchasers. The amount of their bid was not paid, but simply credited on the decree against O. on the agreement that the heirs would account for the same on final settlement with the administrator. W. D. and C. D. afterward conveyed the land to D. and he conveyed it to one N. for four thousand dollars, two thousand of which was paid to the administrator of the estate of M. and the other two thousand to an attorney for services rendered such administrator in behalf of the estate. W., who was a judgment-creditor of the estate of M. at the time of the sale under the decree against O. as above stated, sought by a bill in chancery to subject the land in the hands of L. and others, heirs-at-law of N., who had died, to the payment of his judgment. *Held,* that the devotion of the proceeds of the land to the uses of the estate by the joint act of the administrator and the holders of the legal title put an end to all claim by the estate or its representative against the land, and as the estate had no claim its creditor could have none.

2. SAME. *Chancery practice. Defense made in proof not set up in answer. Rights of infants. Case in judgment.*
   The defense to the suit of W. as set out in the above-stated case is established by the evidence, but is not pleaded or hinted at in the answer. The Chancellor passed upon and sustained this defense, and the cause was argued here without an allusion to the non-existence of any such defense in the answer. Three of the four defendants are minors. *Held,* that in such a state of case this court, in order to protect the infant defendants, will sustain such defense without regard to the pleadings in their behalf.

3. SAME. *Land of decedent liable thereto. Part payment by heirs. Effect.*
   It is no defense to the suit of W. as stated above that the heirs of M., who purchased the land in question, have devoted a large sum of their own money toward the payment of W.'s judgment against the estate of M., and have received no return therefor from such estate, if there is still a balance due upon W.'s judgment.

APPEAL from the Chancery Court of Clay County.
HON. F. A. CRITZ, Chancellor.

In 1855 one Moye was appointed guardian of Moses L. Westbrook. In 1866 Moye died and letters of administration of his estate were granted by the probate court to one Adams. Westbrook filed a petition in the Probate Court of Lowndes County to compel Adams as such administrator to render a final account of the guardianship, and on July 6, 1867, a decree for forty-three thousand nine hundred and eighty dollars and forty-nine cents was rendered in favor of the ward against Moye's estate. In 1873 the ward became of legal age, and in 1874 his decree against Moye's estate was revived in the Chancery Court of Lowndes County. Large payments had been made on this decree, when some years after the revivor, one Wesson, who had been appointed administrator *de bonis non* of Moye's estate, filed a bill to review the original and revived decree, and at the same time a similar bill was filed by the heirs-at-law of Moye. On May 30, 1879, the decree of Westbrook against the estate of Moye was set aside and annulled, and on November 29, 1879, a consent decree for four thousand dollars was entered against the estate of Moye in favor of Westbrook.

On May 31, 1882, the bill in this case was filed in the Chancery Court of Clay County to subject certain land in that county to the satisfaction of the decree of November 29, 1879. The bill alleges that complainant can find no other property liable to his decree. The history of this land is as follows: It had been sold by Moye to one Oliver and notes taken for the purchase-money. Adams, the administrator of the estate of Moye, deceased, proceeded against the land to enforce the vendor's lien thereon, and procured a decree February 27, 1867, for about eighteen thousand dollars, and subjecting the land to be sold for the satisfaction of this unpaid purchase-money. At the sale under this decree the heirs of Moye, W. W. Dancy and Caroline M. Dancy, by their guardian, became the purchasers of the land at five thousand one hundred and thirty dollars. Of this sum one hundred and thirty dollars was paid in cash and the remainder settled by crediting the same on the decree obtained by Adams as administrator against Oliver. The report of the commissioners showed that this was done because the lands

had been bought by the heirs of Moye, who would account to the administrator for the purchase-money on final settlement of the estate of Moye.   This sale was duly confirmed by the court, and a conveyance made on the 28th of August, 1868, to the purchasers, in which the manner of payment as above set out was disclosed.   The Dancys received possession of the land and continued in possession thereof until October 8, 1878, when they, having arrived at the age of majority, sold and conveyed the same to Davis and Dowd, who soon thereafter sold it to one Munger, who died in possession thereof.

This bill was filed against Mrs. Lucy A. Munger and her three minor children as administratrix and heirs of the estate of Munger, deceased, and Wesson, the administrator of Moye's estate, was subsequently made a party defendant.   The defendants answered, setting up several defenses, such as " Payment," " Res judicata," " Release," " Statute of Limitation," none of which are considered by this court.

At the final hearing of the case it was shown that Munger paid four thousand dollars for the land ; that two thousand dollars of this amount was paid to Wesson, administrator *de bonis non* of the estate of Moye, and the balance, two thousand dollars, was paid to Davis and Dowd as attorneys' fees for setting aside the decree of July 6, 1867, against the estate of Moye in favor of Westbrook and the revivor thereof in 1874.

There was also evidence which tended to show that the Dancys, heirs of Moye and purchasers of the Oliver land at the sale, had paid about fifteen thousand dollars of their money derived from the sale of certain lands in Noxubee County on the original decree in favor of Westbrook against the Moye estate for forty-three thousand nine hundred and eighty dollars and forty-nine cents.

The Chancellor decreed in favor of the defendants and dis-missed the bill.   The complainant, Moses L. Westbrook, appealed.

*William Baldwin,* for the appellant.

The doctrine of estoppel cannot be invoked against the appellant. Admitting that the facts are that the Dancy children advanced

and loaned to the administrator of Moye fourteen thousand dollars, to assist in paying off the claim of complainant, and that neither prior nor subsequently was it ever returned, but that they are to-day in their account with the estate of Moye in advance to it the sum of fourteen thousand dollars, appropriated as in the answer set out, what then? Where does the principle of estoppel come in? While the doctrine of equitable estoppel is far-reaching, yet no system of jurisprudence can be established on the high plane of moral ethics, and the principle of estoppel stops far short of the golden rule that we should do unto others as we would that they should do unto us, where does it come in? It is settled in reason, in conscience, and in law that before an estoppel will arise, that the act sought to be estopped was the consideration, the condition, the inducement to the action for which the principle is claimed, before the principle can be invoked to protect the action based thereon.

Can it be said that the fact of having received property of the estate of Moye to the value of four thousand dollars was the consideration upon which the advancement of fourteen thousand dollars was made to the estate of Moye? The amounts show that it could not have been so—that other considerations were present, acting and inducing the loan or advancement, even if this Oliver land was any part of the consideration or had any effect on it whatever. And if there was any other moving, inducing cause to the act done there is no estoppel. It must be the sole and exclusive inducing cause, and if a party has to look to other causes and motives for his action then there is no estoppel.

"And it seems that it must be exclusively acted upon; at all events, there can be no estoppel when the party claiming one is obliged to inquire for the existence of other facts and to rely upon them also in acting." Bigelow on Estoppel, ed. of '76, p. 492 and 493; *McMaster* v. *Ins. Co.*, 55 New York Court of Appeals 229 *et seq.* And it will be observed that these two separate transactions were not contemporaneous in point of time. They were separated by the lapse of two years, and the advancement or loan was made after the getting of the Oliver land, showing that the

Oliver land could not have been taken as part payment for the advancement or loan, for the loan had not then been made. How then is it possible that one could have been the inducement and consideration of the other? They were wholly different transactions, made for different purposes and springing from different causes. And how could Westbrook have escaped the estoppel? What ought he to have done? How has he wronged them? As soon as he could establish in the courts his claim against the estate of Moye over the resistance of these very Dancy children, he asserts his right to the Oliver land. The proposition is monstrous that he would be estopped even if of full age by these facts, but he was not of full age then, nor till years afterward.

*Humphries & Sykes*, on the same side.

1. It was conceded by the Chancellor. that if any part of the purchase-money for the Oliver land was still due the estate of Moye, the complainant in the court below would have a right to pursue this remedy and subject the land in the hands of defendants to the payment of the same. But he requires the wrong person to make proof that the Dancy children have never been repaid out of the Moye estate the fourteen thousand five hundred and thirty-three dollars and ninety-eight and one-half cents claimed to have been advanced it by them out of lands inherited from their ancestor. He says, "There is no proof in the record that the Dancy children were ever repaid by the Moye estate," and because complainant did not furnish such proof he orders the bill to be dismissed.

Now, the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue, and it is therefore generally deemed sufficient, where the allegation is affirmative, to oppose it with a bare denial until it is established by evidence. 2 Greenleaf on Evidence, § 74.

2. The Chancellor, in his opinion, dwelt upon the fact of payment by Munger of four thousand dollars on his purchase of the land in controversy, which, it is claimed, was applied to the payment of the debts of the estate of Moye. For says the Chan-

cellor, " The testimony shows that Munger paid four thousand dollars for the land—two thousand dollars to the administrator, one thousand dollars to Dowd upon a debt due by the estate, and one thousand dollars to Mrs. Davis upon a debt due by the estate. So the equities of the Mungers for this reason are equal to complainant's equities, and he (complainant) could recover nothing until they are repaid the four thousand dollars." In all this the Chancellor mistakes. The facts are that Wesson, the administrator *de bonis non* of Moye and the husband of Caroline M. Dancy, employed Davis & Dowd · to resist the litigation on the part of complainant anterior to this suit to recover of and from the estate the balance claimed to be due him and amounting to about ten thousand dollars, agreeing to give them for their services the sum of one thousand dollars each, and to secure them in their fee made them title to the Oliver land—they to be the mere *conduits* of the title to the same to Stephen I. Munger, who, on the purchase of the land, did pay two thousand dollars to Chas. M. Wesson, not as the administrator, but as the husband of one and the brother-in-law of the other of the Dancy children.

So, in truth and in fact, no part of the purchase-money paid by Stephen I. Munger went to the benefit of the estate of Moye or to pay debts of the said estate.

*Barry & Beckett,* for the appellees.

1. The Dancy children owed five thousand dollars for this land in controversy bought by them in 1868, and the estate of Moye owed them over fifteen thousand dollars, advanced to it to pay to Westbrook on January 1, 1870, and February 1, 1870. These are the admitted facts, and the only contention of complainant is that we must take the burden of proof and show that this fifteen thousand dollars has not been paid back to the heirs. Their agreement, as shown by their cross-bill, was that we were to have it back, and yet they insist that we must show that it was not reimbursed. We have shown that Westbrook got it, and it certainly is but the plainest principles of law and equity for him to show that we have got it back. He does not appear to have made any effort to show that it was paid back, except in his brief, while we

have tried to find out who the Dancy children are so as to find out the facts.

It certainly was never paid back from the administrator in Mississippi. It is certain that the Dancy children owed five thousand dollars for the Oliver land in 1868, and in 1870 advanced to the administrator of Moye fifteen thousand dollars to pay to Westbrook, under an agreement to take the estate of Moye for it. Now this was a payment of the five thousand dollars and left the estate of Moye owing the Dancy heirs over ten thousand dollars.

2. The money paid by Munger went to the benefit of the estate.

The testimony shows that Davis & Dowd were employed by the administrator, Wesson, to set aside the erroneous void decree in favor of Westbrook, on which part payment had been made, and which was revived by Westbrook *without any credits*. They were employed at two thousand dollars, which was a reasonable fee.

The land was sold to Munger for four thousand dollars, and he paid two thousand dollars in cash, which was paid to the administrator, Wesson, and the balance was paid to Davis (one thousand dollars) and Dowd (one thousand dollars), by notes of Munger which were afterward paid by Munger.

3. It is plain that an administrator has the right to employ attorneys and pay them as was done here. *Noel* v. *Harvey*, 7 C. 72; *Satterwhite* v. *Littlefield*, 13 S. & M. 302; *Crowder* v. *Shackelford*, 6 G. 321; *Trustees* v. *Greenough*, 105 U. S. Rep. 527.

It is also plain that an administrator has the power to compromise in good faith claims due the estate. Here the Dancy children had the title to this land, and owed a debt of five thousand one hundred and three dollars for it barred by limitation, and they made a deed to Davis & Dowd for the purpose of enabling them to sell it and pay themselves and use it in connection with the suit. By compromise with all parties they sold it for four thousand dollars, took their fee of two thousand dollars, and turned the balance over to the administrator. So the Dancy children compromised and settled the claim of the estate against them by selling the land and paying this four thousand dollars *to the estate*. An

administrator has the power in good faith to compromise a claim due the estate. *Lang* v. *Shackelford*, 3 C. 559; *Berry* v. *Parker*, 3 S. & M. 638, 639, 640.

*R. C. Beckett*, of counsel for the appellees, made an oral argument.

CAMPBELL, J., delivered the opinion of the court.

We reject as unmaintainable all of the grounds of defence urged by the counsel for the appellees, except that arising from a sale of the land to Munger, and a devotion of the proceeds to the purposes of the estate of Moye, by paying two thousand dollars to the administrator, Wesson, directly, and two thousand dollars to lawyers employed by the administrator for the estate. The devotion of the land to the uses of the estate by the joint act of the administrator and the heirs in whom the legal title was put an end to all claim by the estate or its representative against the land. It was not the property of the estate, but only a security for the sum of money belonging to the estate which was invested in it, and when the representative of the estate consented to a sale of the land and received the proceeds no further claim could be made against the land by him, and as he could not assert a claim against the land, the creditor of the estate cannot, because he can claim only through the administrator. This defence seems to be established by evidence, but it is not pleaded or hinted at in the answer, and we have doubted whether it can be made available in the present state of the record; but as the evidence shows this state of facts, and it was passed on by the Chancellor, and has been argued by counsel here without an allusion to the non-existence of any such defence in the answer, and as the three Munger heirs, parties defendant, are infants, who defend by guardian *ad litem*, and entitled to protection by the court, without regard to the pleadings interposed in their behalf, our conclusion is to sustain this defence.

We are informed by counsel that the Chancellor decreed for the defendants on the above ground and another, viz.: the devotion by the Dancys of about fifteen thousand dollars of their money

derived from the sale of land in Noxubee County to the payment *pro tanto* of the Westbrook decrees. In our opinion, this did not present any reason for denying the claim of the appellant to be paid the balance due him out of the assets of the estate of Moye. He was not equitably estopped from this by the fact that the Dancys, who were heirs of Moye's estate, had paid money of their own to discharge the estate. By accepting payment he did not lessen his right to go for the balance. If the heirs chose to pay the debt in whole or part which bound the estate, that worked no result as against the creditor, except to bar him from claiming against the estate what had been paid him in behalf of the estate. The Dancys were the heirs. They recognized the decrees as charges against the estate, which was their own. They desired to free it from this charge and devoted their means to that purpose. They did not thereby acquire any right or equity against Westbrook, and it is wholly immaterial whether they ever got back from Moye's estate any part or all of the fifteen thousand dollars or not. Whether they did or not makes no difference, so far as Westbrook is concerned.

This was not a payment by the Dancys for the Oliver land, and was not so treated by them, and cannot be by the court. They were not regarded as debtors to the estate for the purchase-money of the Oliver land, and the sum they had received in their unpaid bid for that land was treated as distributed to them subject to be recalled for a future exigency.

Without further notice of the various grounds of defence, the decree is

*Affirmed.*